## SUPERIOR COURT FOR THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

| | |
|---|---|
| TREY OSHAE STEVENSON<br>3592 Hayes Street<br>Washington, DC 20019<br><br>   Plaintiff,<br><br>   v.<br><br>THE DISTRICT OF COLUMBIA<br>c/o Office of the Attorney General<br>441 Fourth Street NW<br>Washington, DC 20001<br><br>CHIEF PETER NEWSHAM<br>300 Indiana Ave., NW<br>Washington, DC 20001<br><br>UNKNOWN MPD EMPLOYESS<br>MPD Sixth District Station<br>5002 Hayes Street, NE<br>Washington, DC 20019<br>and<br>Central Cellblock<br>300 Indiana Ave, NW<br>Washington, DC 20001<br><br>UNKNOWN U.S. MARSHAL<br>H. Carl Moultrie Courthouse<br>500 Indiana Ave, NW<br>Room C-250<br>Washington, DC 20001<br><br>   Defendant. | JURY TRIAL DEMANDED<br><br>19-cv-972 |

## **COMPLAINT**

Trey Stevenson ("Plaintiff" or "Mr. Stevenson"), through his attorneys at the Clark Law Group, PLLC, hereby alleges as follows:

## NATURE OF ACTION

This is a challenge to the District of Columbia's and District of Columbia Metropolitan Police Department (MPD)'s denial of equal protection and due process of the law and unlawful search and detention, in violation of 42 U.S.C. § 1983.

Mr. Stevenson, a resident of the District of Columbia, was born a female, but identifies as a male. In 2012, Mr. Stevenson legally changed his gender to conform to his gender identity.

On August 9, 2017, Plaintiff Trey Stevenson was arrested and transported to the Sixth District MPD Station for processing, where he was charged with Possession of an Open Container of Alcohol ("POCA").  Unknown MPD Officers who were aware of Mr. Stevenson's transgender status, processed Mr. Stevenson as a "lock-up", holding him overnight, rather than releasing him on citation or bond in accordance with MPD procedures.  Unknown MPD Officers and Unknown U.S. Marshal disregarded Mr. Stevenson's legal status and self-identification as a male by groping him and fondling his genitals to determine his anatomical gender, despite his proof of legal status as a male.

 Defendants' actions caused Mr. Stevenson emotional distress and embarrassment and caused him to distrust the police. Mr. Stevenson seeks compensatory and punitive damages from the officers and the District, as well as injunctive relief, attorneys' fees, costs, and other appropriate relief.

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction over Mr. Stevenson's claims constitutional claims under 28 U.S.C. § 1331 (federal question) because they arise under the Fourth and Fifth Amendments to the United States Constitution and he asserts them here under 42 U.S.C. § 1983.

2. Venue is appropriate in this district pursuant to 28 U.S.C. § 1391(b) because the events giving rise to all claims occurred in the District of Columbia.

3. Mr. Stevenson has timely provided notice in writing to the Mayor of the District of Columbia of the "approximate time, place, cause, and circumstances" of his injuries, pursuant to D.C. Code § 12-309. The Notice of Claim Letter was delivered to the D.C. Office of Risk Management on January 26, 2018.

## PARTIES

4. Plaintiff is an African-American adult male who resides in the District of Columbia.

5. Plaintiff was born a female.

6. Plaintiff's given name was Telesha Arnicolia Milhouse.

7. Plaintiff legally changed his name to Trey Oshae Stevenson in 2012.

8. Plaintiff legally changed his gender to male in or around 2012.

9. Plaintiff is a transgender individual.

10. Defendant is the governing body of the District of Columbia, a municipal corporation. It operates and governs the MPD pursuant to the laws of the District of Columbia. The District of Columbia acted through its agents, employees, and servants including all of the individual defendants. The Metropolitan Police Department (MPD) is a *non sui juris* agency of the District of Columbia government.

11. Defendant Unknown MPD Officers are and were, at all times relevant to this Complaint, employed by the Metropolitan Police Department. At all times relevant to this Complaint, Unknown MPD Officers were acting under color of District law and within the scope of their employment at the Metropolitan Police Department. Unknown MPD Officers are sued in their individual capacities.

12. Defendant Unknown U.S. Marshal Service Officer Employees are and were, at all times relevant to this Complaint, employed by the United States Marshals Service. At all times relevant to this Complaint, Unknown U.S. Marshals Service Employees were acting under color of federal law within the scope of their employment at the U.S. Marshals Service. Unknown U.S. Marshals Service Employees are sued in their individual capacities.

13. Defendant Peter Newsham is the Chief of the D.C. Metropolitan Police Department. He failed to adequately train MPD officers as described below.

## FACTS

14. All of the allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference herein as if the same were set forth at length.

### The Traffic Stop

15. On August 9, 2017, at approximately 7 p.m., Mr. Stevenson was driving in the 700 block of Kenilworth Avenue, Northeast, to pick up an "Uber Eats" order from McDonald's.

16. At that time, Metropolitan Police Department Officer Jeffrey Todd, who was patrolling the area at the time, signaled to Mr. Stevenson to pull over.

17. Mr. Stevenson complied.

18. Officer Todd then arrested Mr. Stevenson.

### The Lockup

19. Mr. Stevenson was placed in a patrol vehicle and transported to the Sixth District MPD Station (6D) for booking and processing.

20. Before he was transported to 6D, Bevin Campbell, his girlfriend at the time, called Mr. Stevenson. He informed her that he had been arrested and asked her to meet him at 6D.

21. When Mr. Stevenson arrived at 6D, he was placed in "lock up."

22. Unknown MPD Officers then fingerprinted Mr. Stevenson.

23. Mr. Stevenson asked the Unknown MPD Officers why he was there and when he would be released.

24. An MPD Officer informed Mr. Stevenson that he was charged with Possession of an Open Container of Alcohol ("POCA").

25. The District of Columbia Metropolitan Police Department has enacted a "Citation Release Program, General Order 502.06.

26. Under the Citation Release Program, an adult arrested for a misdemeanor in the District of Columbia is eligible for release, rather than pretrial detention, as long as the misdemeanor offense is not a domestic violence offense and the arrestee has no outstanding warrants.

27. POCA is a misdemeanor offense and is not a domestic violence offense.

28. Mr. Stevenson had no outstanding warrants when he was arrested.

29. Mr. Stevenson did not make any statement indicating that he would not appear in court to answer for his citation.

30. Rather than releasing Mr. Stevenson on citation, Unknown MPD Officer determined that Mr. Stevenson would be processed as a "lockup."

31. After fingerprinting, Mr. Stevenson was placed back in a cell.

32. On information and belief, because Mr. Stevenson's fingerprinting results disclosed his transgendered status, an MPD officer asked Mr. Stevenson if he was transgender.

33. Mr. Stevenson answered "yes."

34. While Mr. Stevenson was being processed, Ms. Campbell arrived at 6D, approached the information window, and asked a clerk about Mr. Stevenson.

35. The clerk responded that Mr. Stevenson had been arrested for POCA, and that it should not be long before he was released.

36. Ms. Campbell took a seat in the waiting area.

37. After waiting for what seemed like hours, Ms. Campbell saw her friend, Ronald Singleton, who was also an MPD officer.

38. Mr. Singleton was exiting 6D because his shift had ended.

39. Ms. Campbell stopped Mr. Singleton and asked him about Mr. Stevenson.

40. Ms. Campbell asked why it was taking so long for Mr. Stevenson to be released when he was only arrested for POCA.

41. A Caucasian MPD officer with white hair, who appeared to be in his fifties or sixties, and who overheard the conversation, approached Ms. Campbell and stated: "I'll tell you why it's taking so long. It used to be a she and now it's a he. We are trying to figure out who he or she is."

42. Already aware of Mr. Stevenson's transgender status and not wishing to discuss it further with the Unknown MPD Officer, Ms. Campbell returned to her seat and continued to wait for Mr. Stevenson.

43. After several hours, Ms. Campbell learned that Mr. Stevenson had been processed as a lockup and went home.

44. Defendant Unknown MPD Officers learned that Mr. Stevenson is a transgender man and solely on that basis decided to process him as a lockup rather than citation release.

**Unknown MPD Officers Refused to Accept Mr. Stevenson's Status as a Male and Subjected him to Unreasonable Body Searches to Confirm His Anatomical Gender**

45. At some point while Mr. Stevenson was detained at 6D, he fell asleep.

46. At approximately 11 p.m., Mr. Stevenson was awakened by an African American MPD officer to be transported to Central Cellblock. He was zip-tied to a male arrestee.

47. Mr. Stevenson asked an Unknown MPD Officer, whose partner had the last name of Lee, why he had not been released yet.

48. The Unknown MPD Officer responded, "We're trying to figure out who you are."

49. The Unknown MPD Officer stated further: "As a matter of fact, get on the wall."

50. Mr. Stevenson complied and put his hands against the wall.

51. The Unknown MPD Officer, who was male, then searched Mr. Stevenson's person, feeling and groping his genitals.

52. The Unknown MPD Officer did not search the male arrestee to whom Mr. Stevenson was zip-tied and did not feel his genitals to determine his gender.

53. Mr. Stevenson was not asked if he had any objections to being searched by a male officer pursuant to General Order 501.02.

**Central Cellblock and the Bullpen**

54. On or about August 10, 2017, Mr. Stevenson was transported from the D.C. Superior Court Cellblock and placed in the custody of the United States Marshal's Service.

55. The United States Marshals were informed of Mr. Stevenson's gender identity.

56. Mr. Stevenson was seated next to and zip-tied to a male arrestee in the transport vehicle.

57. Mr. Stevenson could view his arrest and booking paperwork.

58. The paperwork stated "LGBTQ" in prominent, highlighted letters, in obvious view of Mr. Stevenson and the male individual to whom Mr. Stevenson was zip-tied.

59. The male individual to whom Mr. Stevenson was zip-tied saw Ms. Stevenson's paperwork and gave him a strange look.

60. Mr. Stevenson became afraid that the male individual to whom he was zip-tied would hurt him once they were placed in cells.

61. At some point while he was in the custody of the United States Marshal's Service, an Unknown U.S. Marshal ordered Mr. Stevenson to drop his shorts, stating that he was going to conduct a "genital check."

62. The U.S. Marshal, who was male, felt and groped Mr. Stevenson, out of an apparent attempt to determine his anatomical gender.

63. Mr. Stevenson was not asked if he had any objections to being searched by a male officer pursuant to General Order 501.02.

## **The Aftermath**

64. On or about late afternoon August 10, 2017, Mr. Stevenson was arraigned and then released.

65. Mr. Stevenson was issued a Notice of Infraction for "Turn Wrong Lane" when he returned to 6D to pick up his property.

66. In or around September 2017, the United States Attorney declined to prosecute the POCA charge.

67. Mr. Stevenson suffered the deprivation of his liberty for several hours as a result of Defendants' unlawful actions.

68. Mr. Stevenson suffered emotional distress and humiliation as a result of Defendants' actions.

# CLAIMS

### COUNT I: Violation of Fifth Amendment/42 U.S.C. § 1983, Denial of Equal Protection of the Law – Discrimination on the Basis of Gender and/or Gender Identity

69. All of the allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference herein as if the same were set forth at length.

70. Unknown MPD Officers processed Mr. Stevenson as a lockup for a non-violent misdemeanor offense rather than releasing him on citation or bond solely on the basis of his gender and/or gender identity.

71. Upon information and belief, Unknown MPD Officers do not process non-transgender individuals as a lockup for nonviolent misdemeanor offenses.

72. Unknown MPD Officers and U.S. Marshal subjected Mr. Stevenson to an unreasonable, invasive body search, feeling and groping his genitals, solely on the basis of his gender identity.

73. Upon information and belief, Unknown MPD Officers and U.S. Marshal do not feel the genitals of non-transgender pretrial detainees in order to confirm their gender.

74. Defendants' actions violated the equal protection component of the Fifth Amendment of the United Stations Constitution.

75. Defendants' actions violated 42 U.S.C. § 1983.

76. The denial of Mr. Stevenson's right to equal protection of the law occurred because of a custom or policy of the District of Columbia.

77. Alternatively, the denial of Mr. Stevenson's right to equal protection of the law occurred because of the District's failure to adequately train its employees regarding consent procedures, citation releases, and treatment of transgender detainees.

78. Defendants the District of Columbia and Peter Newsham were aware of the substantial likelihood that their failure to adequately train its employees regarding citation releases and treatment of transgender detainees was substantially likely to result in injury to Mr. Stevenson.

**COUNT II:  Violation of Fourth Amendment/42 U.S.C. § 1983, Unlawful Body Search**

79. All of the allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference herein as if the same were set forth at length.

80. Pursuant to General Order 501.02,  MPD officers are prohibited from searching an individual in order to determine the individual's anatomical gender and "(t)ransgender individuals shall not be subject to more invasive search or frisk procedures than non-transgender individuals[;]" and  (3) a person's Driver's License or other government-issued forms are identification "shall be acceptable as initial proof of gender identity…"

81. Plaintiff provided Defendants his driver's license, which identified him as legally a male.

82. Defendants Unknown MPD Officers and U.S. Marshals Service Employees groped and felt Mr. Stevenson's genitals in an attempt to determine his gender.

83. Defendants groped and felt Mr. Stevenson's genitals without probable cause to believe that Mr. Stevenson possessed dangerous weapons on his person.

84. Defendants' body search of Mr. Stevenson was unreasonable.

85. Defendants' body search of Mr. Stevenson was committed under color of state law.

86. Defendants' conduct violated Mr. Stevenson's right to be free from an unreasonable search.

87. Defendant Unknown MPD Officers and U.S. Marshals Service Employees knew or should have known of the substantial risk that their actions violated Mr. Stevenson's

federally-protected rights to be free from an unreasonable body search to determine his anatomical gender when he had presented proof of his legal gender.

88. Defendants the District of Columbia and Peter Newsham were aware of the substantial likelihood that their failure to adequately train its employees regarding the treatment of transgender detainees was substantially likely to result in injury to Mr. Stevenson.

## PRAYER FOR RELIEF

Plaintiff respectfully requests that this Court grant the following relief:

A. Entry of judgment in favor of Plaintiff against Defendant;

B. Emotional distress damages;

C. Punitive damages;

D. Pre- and post-judgment interest as may be allowed by law;

E. Attorney's fees and costs; and

F. Other such relief as may be appropriate.

## DEMAND FOR TRIAL BY JURY

Plaintiff demands a trial by jury on all questions of fact raised by this Complaint.

Date: April 7, 2019

    Respectfully submitted,
    /s/ Jeremy Greenberg
    Jeremy Greenberg (1024226)
    Denise M. Clark (420480)
    Clark Law Group, PLLC
    1100 Connecticut Ave., N.W.
    Suite 920
    Washington, D.C. 20036
    (202) 293-0015
    jgreenberg@benefitcounsel.com
    dmclark@benefitcounsel.com